EMS USA, INC., Appellant,

v.

Robert SHARY, Appellee.

No. 14–09–00543–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 4, 2010.

William H. Luck, Humble, for appellant.

Kevin Todd Kennedy, Charles Alfred Sturm, Houston, for appellee.

Panel consists of Justices FROST, BOYCE, and SULLIVAN.

## OPINION

WILLIAM J. BOYCE, Justice.

Appellant EMS USA, Inc. challenges the trial court's denial of its application for a temporary injunction.[1] We reverse and remand.

### Background

Energy Facility Services, Inc. and Robert Shary entered into a personal services contract on July 1, 2005. The contract contained a non-compete covenant stating as follows:

---

1. This is an accelerated interlocutory appeal pursuant to Texas Civil Practice and Remedies Code section 51.014(a)(4). Tex. Civ. Prac. & Rem.Code Ann § 51.014(a)(4) (Vernon 2008).

[Shary] agrees for 2 years following the termination of this agreement not to solicit, induce, recruit, or encourage any of the Company's employees to leave their employment, nor will [Shary], directly or indirectly: (i) solicit any of the Company's customers existing as of the date of termination or (ii) take any action to divert business from the Company or influence any vendor, supplier, or customer of the Company to cease doing business with the Company.

The contract also contained a provision regarding handling and disclosure of confidential information, which provides in part as follows:

... Each party shall handle Proprietary Information received from the other party with a high degree of care. Disclosure of Proprietary Information shall be restricted to those individuals who need access to it to ensure proper performance of the Services.

\* \* \*

Each party shall promptly return all Proprietary Information relating to this Agreement to the disclosing party upon its request or upon termination of this Agreement, whichever occurs first. Each party may retain a copy of Proprietary Information for its internal records, subject to the restrictions set forth in this Section. This Section shall survive termination of this Agreement.

Energy Facility Services later merged into EMS. EMS subsequently terminated Shary's personal services contract on April 12, 2008. EMS filed a petition on May 13, 2009, alleging that Shary breached the contract's non-compete covenant. EMS also requested a temporary restraining order, a temporary injunction, and a permanent injunction to prevent Shary from violating the contract's non-compete covenant. The trial court granted EMS's request for a temporary restraining order on May 13, 2009, and set a hearing on EMS's request for a temporary injunction for May 22, 2009.

The trial court heard argument from both parties at the May 22, 2009 hearing addressing whether the non-compete covenant was unenforceable as a matter of law. The trial court also heard argument regarding whether it was necessary for the trial court to hear testimony regarding the validity of the non-compete covenant before ruling on EMS's application for a temporary injunction. At the conclusion of the hearing, the trial court asked both parties to submit supplemental briefing on the necessity of hearing such testimony. The trial court also set a hearing for further argument regarding EMS's application for a temporary injunction on May 27, 2009.

On May 26, 2009, Shary submitted a supplemental brief addressing the need for testimony before the trial court ruled on EMS's application for a temporary injunction. EMS did not submit a supplemental brief. At the second hearing, the trial court again heard argument regarding whether (1) the non-compete covenant was unenforceable as a matter of law; and (2) it was necessary for the trial court to hear testimony before ruling on EMS's application for a temporary injunction.

After the May 27, 2009 hearing, the trial court signed an order denying EMS's application for a temporary injunction and stated as follows: "Having considered the face of the contract, applicable law, and the arguments of counsel, the Court determines that the Application must be DENIED." The trial court predicated its denial of EMS's application for a temporary injunction on findings that "EMS is not likely to succeed on the merits of its claim that Shary is violating the non[-]compete provision at issue" because the non-com-

pete covenant is not (1) "ancillary to or part of an otherwise enforceable agreement;" or (2) a reasonable restraint. EMS appeals from the order denying its application for a temporary injunction.

EMS contends on appeal that the trial court abused its discretion when it denied EMS's application for a temporary injunction without hearing testimony. According to EMS, the trial court should have heard evidence addressing whether the non-compete covenant (1) was "ancillary to or part of" the personal services contract; (2) contained reasonable restraints; and (3) should be reformed if it is determined to be overbroad.

### Standard of Review

■ A temporary injunction preserves the status quo until trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002). To obtain a temporary injunction, the applicant must plead a cause of action against the defendant and show both a probable right to recover on that cause of action and a probable, imminent, and irreparable injury in the interim. *Id.* To show a probable right of recovery, the applicant must present evidence to sustain the pleaded cause of action. *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 197 (Tex. App.-Fort Worth 2005, no pet.). An injury is irreparable when the injured party cannot be adequately compensated in damages or if damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204.

■ EMS argues that we should review the trial court's order denying its application for a temporary injunction *de novo* because "the enforceability of a [non-compete covenant] is a question of law." *See Martin v. Credit Prot. Ass'n, Inc.*, 793 S.W.2d 667, 668–69 (Tex.1990) (op. on reh'g). Specifically, EMS argues that we

should review the trial court's denial of its application for a temporary injunction under the Texas Covenants Not to Compete Act (Tex. Bus. & Comm.Code Ann. §§ 15.50–.52 (Vernon 2002)).

This court has held that the Texas Covenants Not to Compete Act does not preempt the common law relating to temporary injunctions. *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 695 (Tex. App.-Houston [14th Dist.] 2004, no pet.); *see also Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 238–39 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (same). "[T]he clear language of the [Texas Covenants Not to Compete Act] expresses an intention to govern only final remedies. By its very nature, a temporary injunction is not a final remedy. Accordingly, we look to the common law rules governing temporary injunctions in determining whether the court below properly denied the application." *Younker*, 154 S.W.3d at 695.

■ Under the common law, the decision to grant or deny a temporary injunction lies within the sound discretion of the trial court. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993). A trial court does not abuse its discretion by granting a temporary injunction if some evidence supports its decision. *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 419 (Tex.App.-Houston [14th Dist.] 2007, no pet.). In reviewing the trial court's exercise of discretion, the appellate court must draw all legitimate inferences from the evidence in the light most favorable to the trial court's decision. *Id.* When no findings of fact or conclusions of law are filed, the trial court's determination of whether to grant or deny a temporary injunction "must be upheld on any legal theory supported by the record." *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *see Tom James of*

*Dallas, Inc. v. Cobb,* 109 S.W.3d 877, 884 (Tex.App.-Dallas 2003, no pet.).

We review the trial court's determinations on a question of law *de novo. Walker v. Packer,* 827 S.W.2d 833, 849 (Tex.1992). The enforceability of a non-compete covenant is a question of law. *Martin,* 793 S.W.2d at 668–69. Therefore, we review a trial court's determination on the enforceability of a non-compete covenant *de novo. See id.; Walker,* 827 S.W.2d at 849. The legal issues before a trial court at a temporary injunction hearing are whether the applicant showed a probability of success and irreparable injury. *Cobb,* 109 S.W.3d at 882–83. The underlying merits of the controversy are not presented. *Id.* Accordingly, any appeal of an order granting or denying a temporary injunction based on a non-compete covenant does not present for appellate review the ultimate question of whether the covenant is enforceable under Texas Business and Commerce Code sections 15.50–.52. *Id.* In reviewing a trial court's granting or denying of an application for a temporary injunction, we review only the trial court's exercise of discretion in determining that a plaintiff did not show (1) likelihood of success on the merits at trial; or (2) irreparable injury. *Id.* at 883.

## Analysis

A non-compete covenant is unenforceable unless it satisfies Texas Business and Commerce Code section 15.50(a):

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the

goodwill or other business interest of the promisee.

Tex. Bus. & Com.Code Ann. § 15.50(a).

EMS first argues that the trial court abused its discretion when it denied EMS's application for a temporary injunction without hearing testimony regarding whether the non-compete covenant was "ancillary to or part of" the personal services contract.

For a non-compete covenant to be "ancillary to or part of an otherwise enforceable agreement," the employer must establish that (1) "the consideration given by the employer in the otherwise enforceable agreement ... give[s] rise to the employer's interest in restraining the employee from competing;" and (2) "the covenant [is] designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 849 (Tex. 2009). Unless both requirements are satisfied, the non-compete covenant "is a naked restraint of trade and unenforceable." *Id.* "[B]usiness goodwill and confidential or proprietary information" are examples of interests that warrant protection by a non-compete covenant. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 649 (Tex.2006). An enforceable non-compete covenant must be designed to enforce the return promises made by the employee. *Id.* An employer may expressly or impliedly promise to provide an employee with confidential information:

> ... if the nature of the employment for which the employee is hired will reasonably require the employer to provide confidential information to the employee for the employee to accomplish the contemplated job duties, then the employer impliedly promises to provide confidential information and the covenant is en-

forceable so long as the other requirements of the Covenant Not to Compete Act are satisfied.

*Fielding,* 289 S.W.3d at 849.

EMS argues that evidence is necessary to determine whether EMS impliedly promised to provide confidential information to Shary, and whether the implied promise was ancillary to EMS's and Shary's agreement not to disclose any confidential information received. We agree.

Under *Fielding,* an employer may impliedly promise to provide confidential information to an employee "if the nature of the employment for which the employee is hired will reasonably require the employer to provide confidential information to the employee to accomplish the contemplated job duties[.]" *Id.* at 845. To determine if there is an implied promise, the court must analyze the circumstances surrounding the employee's employment and determine whether those circumstances "necessarily involved the provision of confidential information to" the employee "before [the employee] could perform the work [the employee] was hired to do[.]" *See id.* at 851.

In this case, the trial court denied EMS's application for a temporary injunction without hearing evidence regarding the circumstances surrounding Shary's employment with EMS. Therefore, the trial court could not have considered whether, under *Fielding,* (1) EMS impliedly promised to provide confidential information to Shary; and (2) EMS's implied promise, if any, was "ancillary to or part of" EMS's and Shary's agreement not to disclose any confidential information received from the other party. *See id.* at 850–52.

Shary argues that the trial court did not abuse its discretion because the non-compete covenant was unreasonable as a matter of law. *See Davis,* 571 S.W.2d at 862 (When no findings of fact or conclusions of

law are filed, the trial court's determination of whether to grant or deny a temporary injunction "must be upheld on any legal theory supported by the record."); *Cobb,* 109 S.W.3d at 884 (same).

 We review a trial court's determination of whether a non-compete covenant is reasonable *de novo.* *Martin,* 793 S.W.2d at 668–69; *Walker,* 827 S.W.2d at 849. But we do not address the ultimate issue of whether the non-compete covenant is enforceable. *Cobb,* 109 S.W.3d at 882–83. We address only the trial court's determination of whether a non-compete covenant is reasonable to determine if the trial court abused its discretion in determining whether a plaintiff established that it would (1) likely succeed on the merits of the issue at final trial; or (2) suffer irreparable injury. *See id.* Restraints are unreasonable if they are broader than necessary to protect the legitimate interests of the employer. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 681–82 (Tex.1990); *John R. Ray & Sons, Inc. v. Stroman,* 923 S.W.2d 80, 85 (Tex.App.-Houston [14th Dist.] 1996, writ denied).

The non-compete covenant states as follows:

> [Shary] agrees for 2 years following the termination of this agreement not to solicit, induce, recruit, or encourage any of the Company's employees to leave their employment, nor will [Shary], directly or indirectly: (i) solicit any of the Company's customers existing as of the date of termination or (ii) take any action to divert business from the Company or influence any vendor, supplier, or customer of the Company to cease doing business with the Company.

Shary argues that the non-compete covenant was unenforceable as a matter of law because "[i]t prohibits him from soliciting *any* customers that EMS had as of the

date that he left EMS, regardless of whether he had any involvement with those customers while at EMS." (emphasis in original).

■■■■■ A restraint on client solicitation in a personal services contract is overbroad and unreasonable if it extends to clients with whom the employee had no dealings during his employment. *Peat Marwick Main & Co. v. Haass,* 818 S.W.2d 381, 386–88 (Tex.1991); *Stroman,* 923 S.W.2d at 85. However, a prohibition against contacting existing customers does not necessarily equate to a prohibition against contacting customers with whom the former employee had no dealings. A restraint on client solicitation in a personal services contract limited to current customers is not necessarily unreasonable on its face. *See Henshaw v. Kroenecke,* 656 S.W.2d 416, 417–18 (Tex.1983).

In *Henshaw,* for example, Henshaw and Kroenecke created a two-person partnership using an agreement containing a non-compete covenant prohibiting Kroenecke from "compet[ing] with Henshaw in the business as then carried on by the partnership for a period of three years from the date of termination." *Id.* at 417. The partnership agreement stated that " 'competition' for the purposes of [the non-compete covenant] shall have the limited definition of providing any similar services to the then clients of the partnership or to those clients who have ceased being clients within the twelve months immediately preceding such termination." *Id.* Kroenecke argued that the non-compete covenant was unreasonable and unenforceable. *Id.* at 418. The court analyzed the circumstances under which the non-compete cov-

enant was entered and held that the non-compete covenant was not unreasonable. *Id.*

Contrary to Shary's suggestion, the non-compete covenant at issue here does not necessarily prohibit Shary from contacting customers with whom he had no dealings. Rather, the non-compete covenant states that Shary cannot "solicit any of the Company's customers existing as of the date of termination." Depending on what the evidence shows, the non-compete covenant may prohibit Shary from contacting customers with whom he had no dealings or it may not. Determining whether the non-compete covenant is a reasonable restraint depends on the circumstances surrounding execution of the contract; the universe of customers covered by the non-compete covenant; and whether Shary had dealings with all of the customers in that universe, or only some of them. *See id.; see also Haass,* 818 S.W.2d at 386–88.

We conclude that the trial court abused its discretion when it denied EMS's application for a temporary injunction without hearing testimony regarding whether the non-compete covenant was (1) "ancillary to or part of" the personal services contract; and (2) a reasonable restraint.[2] *See Sharma,* 231 S.W.3d at 419.

## Conclusion

We reverse the trial court's May 27, 2009 order denying EMS's application for a temporary injunction and remand this case for further proceedings in accordance with this opinion.

**2.** Because we conclude that the trial court abused its discretion when it denied EMS's application for a temporary injunction without hearing testimony regarding whether the non-compete covenant was "ancillary to or part of" the personal services contract and a reasonable restraint, we need not address EMS's second issue regarding reformation of the non-compete covenant.