Affirmed and Memorandum Opinion filed June 9, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00992-CV

___________________

 

Allied Home Mortgage Capital Corporation,
Appellant

 

V.

 

Jonathan Fowler, Appellee



 



 

On
Appeal from the 215th District Court

Harris County,
Texas



Trial Court Cause No. 2010-54286

 



 

 

MEMORANDUM OPINION

Appellant, Allied Capital Home Mortgage Capital
Corporation appeals from the trial court’s denial of its request for a
temporary injunction.[1] 
We affirm.

Factual and Procedural
Background

            Appellant
functions as both a mortgage banker and broker.  Prior to the collapse of the
mortgage industry in 2008, appellant had between 400 and 450 branch offices
throughout the United States.  At the time of the temporary injunction hearing
on September 10, 2010, appellant had approximately 200 branch offices.  As a
result of this dramatic reduction in size, appellant laid-off many employees. 
One of those laid-off employees was appellee, Jonathan Fowler.

Fowler began working for appellant in September
1999.  Fowler started as a branch office manager and worked his way up to become
the “senior vice president, production manager, business development.”  In that
position Fowler was responsible for developing new branches.  On October 9,
2005, after Fowler had worked for appellant for approximately six years, he executed
an Employment Agreement (the “Agreement”).[2] 
The relevant sections of the Agreement provide:

1.1       [Appellant] hereby employs [Fowler] and [Fowler]
hereby accepts employment with [appellant].  [Appellant] and [Fowler] agree
that this employment shall be at will and is subject to termination by either
[appellant] or [Fowler] at any time, for any reason, with or without cause or
notice. (emphasis in the original.)

4.1       [Fowler] during the term of employment under this
Agreement will have access to and become familiar with various company terms,
forms, procedures, and records, which are owned by [appellant] and which are
regularly used in the operation of the business of [appellant].  [Fowler] shall
not disclose any of the aforesaid company forms, procedures, or records, nor
use them in any way during the term of this Agreement, except as required in
the course of [Fowler’s] employment, and at no time thereafter.  All files,
records, documents, drawings, specifications, proprietary information, and
similar items relating to the business of [appellant], whether prepared by
[Fowler] or otherwise coming into [Fowler’s] possession, shall remain the
exclusive property of [appellant] and shall not be copied or removed from the
premises of [appellant] under any circumstances whatsoever without the prior
written consent of [appellant].

4.2       During the term of this Agreement, [Fowler] shall
not, directly or indirectly in any manner, … engage or participate in any
business competing in any manner whatsoever with the business of [appellant]. 
[Fowler] further agrees that for a period of one (1) year from the date of
termination of employment by [Fowler] or [appellant], for any reason, that
[Fowler] will not disclose the name of or contact or solicit business from any
person, partnership, business or entity who at the time of such termination is
a customer of [appellant], or refers business to [appellant] within a 25 miles
radius of the office at which [Fowler] works.  Nor shall [Fowler] during the
term of this Agreement have additional employment … in the mortgage or real
estate industry….

4.3       During the term of [Fowler’s] employment and upon
termination of employment by [Fowler] or [appellant], and for a period of one
year thereafter, [Fowler] shall not, either directly or indirectly, interfere
with the business of [appellant], nor shall [Fowler] solicit, attempt to hire
or hire any other personnel or employees of [appellant] or any of its
subsidiaries or affiliates without written approval of [appellant]….

5.2       This Agreement supersedes any and all other
agreements, either oral or in writing between the parties hereto with respect
to the employment of [Fowler] by [appellant] and contains all of the covenants
and agreements between the parties with respect to such employment in any
manner whatsoever.  This Agreement may not be modified except in writing signed
by both [appellant] and [Fowler].   

Fowler was laid-off by appellant effective May 1,
2009.  On or about December 31, 2009, Fowler was hired by Iwayloan, L.P.  Iwayloan
started conducting business in 1998 as an
internet-based mortgage lender, and it competed with appellant for mortgage
business.  In addition to Fowler, Iwayloan also hired several other former
at-will employees of appellant:  Linda Bullington, Darrin Dunn, Jane Stathas,
Tracy Cheatham, Jennifer Bazor, Stacy Rios, Ivan Socaski[3], and Fowler’s
brother, Cory Fowler.[4]

Appellant filed suit against Fowler on August 30,
2010.  In the suit appellant sought “to restrain [Fowler] from soliciting our
current employees and placing them in positions that it would be inevitable
that they’re going to use our trade secret information.”  Appellant
successfully obtained a temporary restraining order against Fowler.  The
hearing on appellant’s application for a temporary injunction occurred on
September 10, 2010.  Much of the evidence was focused on the former Allied
employees listed above.

The evidence introduced during the temporary
injunction hearing established that Bullington served as the Pennsylvania state
manager for appellant.  As a result of internal problems at appellant, Bullington
became increasingly dissatisfied with her position working for appellant.  The
evidence also demonstrated Bullington was friends with Fowler and approached
him as early as March 2010 to help her find new employment.  The evidence also
established that Fowler consistently refused to discuss the issue with Bullington
during the one-year period following his discharge.  In fact, Fowler denied
soliciting Bullington at all.   Instead, while Fowler admitted he was involved
in the hiring of Bullington, he testified: “Bullington came to Iwayloan because
of me, but I didn’t recruit her.”  Bullington signed an employment agreement
with Iwayloan on May 3, 2010.  According to Larry Lobb, one of the owners of Iwayloan,
Bullington’s signature did not mean she was actually employed at that point by
Iwayloan, but only that she had completed a step in the approval process.  Bullington
resigned from appellant on June 7, 2010 and started working for Iwayloan as a
branch manager in Pennsylvania on June 8, 2010.

            The evidence
established that Dunn served as a loan processor for appellant and that he
stopped working for appellant in January 2007, more than two years before
Fowler was laid-off.  It was undisputed that Dunn was hired by Iwayloan in the
summer of 2010 to work as a branch manager in Pennsylvania.  Stathas was fired
by appellant in March 2009.  Stathas then worked for two different mortgage
companies before she was hired by Iwayloan as a Dallas branch manager in August
2010.  Fowler admitted he recruited both Dunn and Stathas to join Iwayloan.

            Cheatham testified during the temporary injunction
hearing.  She stated that she was employed by appellant as a branch operations
manager.  When appellant eliminated her position, Cheatham was laid-off on
January 22, 2010.  Cheatham was hired by Iwayloan on March 10, 2010.  Fowler
testified that he did not recruit Cheatham.  Instead, Fowler testified that he
was aware Cheatham needed a job and Iwayloan needed someone with her
experience, so he “called her and set-up an interview.”  Subsequently, Cheatham
was hired. 

            Bazor was an IT
help-desk administrator, loan processor, and loan originator for appellant. 
Bazor resigned from appellant’s employ on July 21, 2010.  Iwayloan hired Bazor as
a loan processor during July 2010.  Fowler denied that he recruited Bazor to
join Iwayloan.

            Rios was the
manager of appellant’s world development program.  Rios stopped working for
appellant in October 2008, approximately six months before Fowler was laid-off. 
After Rios stopped working for appellant, she worked for two different
companies before joining Iwayloan in July 2010.

            Socaski worked for
appellant as an underwriter.  Socaski ceased working for appellant in November
2007, more than a year before Fowler was laid-off.  Socaski was hired by
Iwayloan long before Fowler began working there in December 2009.

            Fowler’s brother,
Cory, was employed by appellant, but left in March 2003, more than six years
before Fowler was laid-off.  Like Socaski, Cory’s employment with Iwayloan began
before his brother was hired.

            Appellant also
alleged Fowler had possession of and was using appellant’s confidential
information.  Fowler admitted that, at one point in time after his employment
with appellant ended, he did possess three items from appellant: (1) an old
branch operations manual; (2) marketing materials; and (3) a utility or
training disk.  Sandra Wiley, a senior vice-president for appellant, testified that
appellant considered each of these items to be confidential.[5]  Wiley also
testified that, at Fowler’s request, she emailed an old version of appellant’s
operations manual to Fowler.[6] 
During the hearing, Fowler described how he took possession of the other two
items.  According to Fowler, at the end of his last day of employment, he exited
his office without taking any personal possessions.[7]  Later, some of appellant’s
employees packed his personal items and they mistakenly included marketing
materials and the utility disk.  Fowler testified he did not request that the employees
include those items with his personal property.  Fowler stated that when he
spoke with appellant’s employees, he probably referred to the operations manual
and utility disk as reference materials.  Fowler also testified that he did not
consider any of the three items to be appellant’s confidential information.  Fowler
further testified that appellant had not informed him that those items were
considered to be confidential.  All three items were returned to appellant by
Fowler’s attorney on September 6, 2010.  Finally, Fowler testified that he was
not currently soliciting any of appellant’s employees to join Iwayloan and
bring confidential information belonging to appellant with them.[8]

            A single witness
at the temporary injunction hearing addressed the harm appellant allegedly has
suffered as a result of Fowler’s allegedly improper conduct.  Stell,
appellant’s director of compliance, when responding to a question asking about the
harm appellant had suffered, told the court that was a “hard one to answer.” 
Ultimately, she testified that appellant’s harm was the loss of investment or
the expense appellant would endure going back and developing new training
materials.

            Following the
hearing, the trial court denied appellant’s request for a temporary
injunction.  No findings of fact and conclusions of law were requested or
filed.  This interlocutory appeal followed.

Discussion

In a single issue on
appeal appellant contends the trial court abused its discretion when it denied
appellant’s application for a temporary injunction.

I.         The
standard of review and applicable law.

            A
trial court has broad discretion in deciding whether to deny a temporary
injunction.  Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002). 
We review the denial of a temporary injunction for a clear abuse of discretion
without addressing the merits of the underlying case.  Walling v. Metcalfe,
863 S.W.2d 56, 58 (Tex. 1993).  We will uphold the trial court’s determination
against issuing injunctive relief unless the trial court’s action was so
arbitrary that it exceeded the bounds of reasonable discretion.  Butnaru,
84 S.W.3d at 204.  In reviewing the trial court’s exercise of discretion, the
appellate court must draw all legitimate inferences from the evidence in the
light most favorable to the trial court’s decision.  EMS USA, Inc. v. Shary,
309 S.W.3d 653, 657 (Tex. App.—Houston [14th Dist.] 2010, no pet.).  When, as
here, no findings of fact or conclusions of law are filed, the trial court’s
determination of whether to grant or deny a temporary injunction must be upheld
on any legal theory supported by the record.  Id.

            An
applicant for a temporary injunction seeks extraordinary relief.  In re Tex.
Natural Res. Conservation Comm’n, 85 S.W.3d 201, 204 (Tex. 2002).  The sole
issue before the trial court in a temporary injunction hearing is whether the
applicant may preserve the status quo of the litigation’s subject matter
pending trial on the merits.  Davis v. Huey, 571 S.W.2d 859, 862 (Tex.
1978).  The status quo is the last actual, peaceable, noncontested status which
preceded the pending controversy.  RP & R, Inc. v. Territo, 32
S.W.3d 396, 402 (Tex. App.—Houston [14th Dist.] 2000, no pet.)

To obtain a temporary
injunction, the applicant must plead a cause of action against the defendant
and show both a probable right to recover on that cause of action and a
probable, imminent, and irreparable injury in the interim.  EMS USA, Inc. v.
Shary, 309 S.W.3d 653, 657 (Tex. App.—Houston [14th Dist.] 2010, no pet.)
(citing Butnaru, 84 S.W.3d at 204).  To show a probable right of
recovery, the applicant must plead and present evidence to sustain the pleaded
cause of action.  Id.  An injury is irreparable when the injured party
cannot be adequately compensated in damages or if damages cannot be measured by
any certain pecuniary standard.  Id.  An existing legal remedy is
adequate if it is as complete, practical, and efficient to the ends of justice
and its prompt administration as is equitable relief.  Hilb, Rogal &
Hamilton Co. of Texas v. Wurzman, 861 S.W.2d 30, 32 (Tex. App.—Dallas 1993,
no writ.).   There is no adequate remedy at law if the plaintiff cannot
calculate damages or if a defendant is incapable of responding in damages.  Id.  
The party applying for a temporary injunction has the burden of production,
which is the burden of offering some evidence that establishes a probable right
to recover and a probable interim injury.  Dallas Anesthesiology Associates,
P.A. v. Texas Anesthesia Group, P.A., 190 S.W.3d 891, 897 (Tex. App.—Dallas
2006, no pet.).  If an applicant does not discharge its burden, it is not
entitled to injunctive relief.  Id.

II.        Appellant did not
establish that the trial court abused its discretion by denying appellant’s
request for a temporary injunction.

The applicant for a temporary injunction bears the
burden to present evidence sufficient to demonstrate a probable, imminent, and
irreparable injury.  The harm is irreparable when the injured party cannot be
adequately compensated in damages or if the damages cannot be measured by any
certain pecuniary standard.  EMS USA, 309 S.W.3d at 657.  Based on the
evidence in the appellate record, the trial court could have reasonably concluded
that monetary damages would adequately compensate appellant for any alleged
loss of investment if it prevailed at trial.  Daily Int’l Sales Corp. v.
Eastman Whipstock, Inc., 662 S.W.2d 60, 64 (Tex. App.—Houston [1st Dist.]
1983, no writ).  An applicant for a temporary injunction has the burden to
establish all of the requirements for a temporary injunction.  A trial court has
broad discretion to determine whether the applicant met that burden.  Hilb,
Rogal & Hamilton Co. of Texas, 861 S.W.2d at 33.  We conclude that,
when viewed in the light most favorable to the trial court’s order, the
evidence supports the trial court’s refusal to grant injunctive relief. 
Therefore, we conclude the trial court did not abuse its discretion by denying
appellant’s application for a temporary injunction.  We overrule appellant’s
single issue on appeal.

Conclusion

            Having overruled
appellant’s issue, we affirm the trial court’s order denying appellant’s
request for a temporary injunction. 

   

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

 

Panel consists of Justices
Anderson, Seymore, and McCally.

 









[1] Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West 2008).





[2] Appellant also introduced
into evidence during the temporary injunction hearing a “Confidentiality
Agreement” executed by Fowler on September 24, 1999.  Because the Agreement
contains a merger clause, we conclude the September 24, 1999 Confidentiality
Agreement was superseded by the Agreement and therefore has no bearing on
Fowler’s duties during his employment or after it was terminated.  See
Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America, No.
08-0989, 2011 WL 1445950, at *6 (Tex. April 15, 2011) (discussing the purpose
of standard merger clauses, which ensure “that the contract at issue
invalidates or supersedes any previous agreements, as well as negating the
apparent authority of an agent to later modify the contract’s terms.”)





[3] During the temporary
injunction hearing, the witnesses were unsure of the exact spelling of this
person’s name; therefore we adopt the spelling used by appellant in its’
appellate brief.





[4] Appellant also alleged
Iwayloan hired appellant’s former general counsel and executive vice president,
Tony Musgrave.  The evidence introduced during the temporary injunction hearing
was undisputed that Musgrave was not hired by Iwayloan; instead he served as
outside counsel for Iwayloan. 





[5] Jeanne Stell, the
director of compliance for appellant, testified during the temporary injunction
hearing.  According to Stell, appellant considers everything it has developed
and done over the years to be confidential and proprietary information.  Stell,
when asked if there was anything that a former employee of appellant could say
about appellant that was not considered confidential, she responded: “just what
a good company it is.”





[6] As a result of her
disclosure that she had sent Fowler a copy of the operations manual, Wiley was
terminated soon after the temporary injunction hearing.





[7] Fowler also testified he
took all of his office keys and security badges with him that day.  According
to Fowler, appellant never asked for them back.  Fowler testified he eventually
returned them to an employee of appellant at a social function.





[8] Lobb testified Iwayloan
has a policy prohibiting employees from using any confidential information
belonging to former employers.