**Affirmed and Memorandum Opinion filed January 28, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00054-CV

### CASSIDY DANIELS; MICHAEL CHASE DANIELS; NEWTEX STAFFING, LLC, Appellant

### V.

### RADLEY STAFFING, LLC, Appellee

On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 18-DCV-253396

## MEMORANDUM OPINION

Appellants Cassidy Daniels, Michael "Chase" Daniels, and NewTex Staffing, LLC appeal the trial court's order granting a temporary injunction in favor of appellee Radley Staffing, LLC. In seven issues[1] appellants challenge the temporary injunction entered against them. We affirm.

---

[1] Appellants state that they present six issues for review. As explained below, we construe appellants' second issue as two separate issues on appeal.

# I. BACKGROUND

Appellants Cassidy Daniels and Michael Chase Daniels are siblings that were formerly employed by appellee Radley Staffing, LLC. Appellee terminated Chase's employment in late 2017. Chase formed NewTex Staffing, LLC shortly after his departure from appellee's employ. Cassidy resigned her position as a business development manager on May 31, 2018. Shortly after Cassidy's departure, appellee learned that some of its clients began using NewTex to fill staffing needs instead of appellee. Appellee discovered that Chase and Cassidy were working for NewTex and that while they were still employed by appellee, both Chase and Cassidy transferred appellee's documents to their personal email accounts.

Appellee filed suit against Cassidy, Chase, and NewTex alleging misappropriation of trade secrets, breach of fiduciary duty, unfair competition, and tortious interference with business relationships and requested injunctive relief. The trial court conducted an evidentiary hearing on appellee's application for temporary injunction. At the conclusion of the hearing, the trial court entered an order granting the application and prohibiting appellants from using or disclosing any of appellee's documents or information. This accelerated interlocutory appeal followed.

# II. VERIFICATION

Appellants argue that the verification to the application for temporary injunction was defective because portions of it were made upon appellee's "information and belief." The trial court granted the temporary injunction after a full evidentiary hearing on the merits of the application with the participation of all of the parties. "A verified petition is not essential to the granting of a temporary injunction granted after a full hearing on the evidence independent of the petition."

2

*Ohlhausen v. Thompson*, 704 S.W.2d 434, 437 (Tex. App.—Houston [14th Dist.] 1986, no writ); *Georgiades v. Di Ferrante*, 871 S.W.2d 878, 882 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (verified petition for injunctive relief not required to grant temporary injunction after trial court conducted a three-day hearing on the application). Appellants' sixth point is overruled.

## III. MISSAPPROPRIATION OF TRADE SECRETS

Appellants argue that the trial court abused its discretion in granting the temporary injunction against them on appellee's misappropriation of trade secrets claim because: (1) "[t]he information from [appellee] that Appellants retained after their employment ended was acquired through proper means while employed"; (2) no reasonable measures were taken by appellee to ensure that its alleged trade secrets were kept secret; (3) there was no evidence presented as to the economic value of the alleged trade secrets; and (4) there was no evidence showing that "the information at issue was used to Appellee's detriment or disclosed to third parties."

### A. Legal Principles

To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). We review an order granting a temporary injunction under an abuse of discretion standard. *Id*. We "cannot overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles." *Id*. at 211. We cannot substitute our judgment for the judgment of the trial court. *Id*. "The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision." *Id*.

We view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in favor of the ruling. *LasikPlus of Tex., P.C. v. Mattioli*, 418 S.W.3d 210, 216 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "An abuse of discretion does not occur when a trial court bases its decision on conflicting evidence." *Id.* An irreparable injury is when a party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Id.* At a temporary injunction hearing the applicant is not required to present the underlying merits of the controversy or establish the applicant will ultimately prevail. *Id.* Thus, the ultimate merits of the lawsuit are not before the trial or appellate court. *See EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 658 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The sole issue before a trial court in a temporary injunction hearing is whether the applicant may preserve the status quo, pending trial on the merits. *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 21 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd).

The Texas Uniform Trade Secrets Act (TUTSA) defines "misappropriation" as:

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>> (i) used improper means to acquire knowledge of the trade secret;
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:
>>
>>> (a) derived from or through a person who used improper means to acquire the trade secret;

(b) acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or

(c) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret; or

(iii) before a material change of the position of the person, knew or had reason to know that the trade secret was a trade secret and that knowledge of the trade secret had been acquired by accident or mistake.

Tex. Civ. Prac. & Rem. Code § 134A.002(3). Generally, employees owe a fiduciary duty to maintain the confidentiality of their employer's information. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 202 (Tex. 2002) (citing *Augat, Inc. v. Aegis, Inc.*, 409 Mass. 165, 565 N.E.2d 415, 419–20 (1991)); *T-N-T Motorsports, Inc.*, 965 S.W.2d at 21–22 ("Certain duties, apart from any written contract, arise upon the formation of an employment relationship. One of those duties forbids an employee from using confidential or proprietary information acquired during the relationship in a manner adverse to the employer." (citation omitted)); *General Insulation Co. v. King*, No. 14-08-00633-CV, 2010 WL 307952, *4 (Tex. App.—Houston [14th Dist.] Jan. 26, 2010, no pet.). This duty survives termination of the employment. *T-N-T Motorsports, Inc.*, 965 S.W.2d at 22.

A "trade secret" is defined as:

[A]ll forms and types of information, including a . . . compilation, . . . method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, . . . if:

(A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being

5

readily ascertainable through proper means by, another person who can obtain economic value from its disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code §134A.002(6).

"The fact that a temporary injunction order was issued granting trade secret protection does not mean the protected information is a trade secret." *Sharma v. Vinmar Intern., Ltd.*, 231 S.W.3d 405, 424 (Tex. App.—Houston [14th Dist.] no pet.). "That issue will be decided upon a trial on the merits." *Id*.

### B. Background

At the temporary injunction hearing, appellee testified that all its information is entitled to trade secret protection. Appellee keeps its "electronic information on internal servers, internal drives that are allocated to certain employees who would need the documents within those drives." Employees are not permitted to use private email accounts to disseminate appellee's confidential information. Appellee's employee handbook required Cassidy and Chase to keep appellee's information confidential. Every employee signs an employee handbook that details appellee's policies with regard to its confidential information stating that "confidential information must not be disclosed to anyone without an authorized business need for access" and "all confidential information must reside in protected directories while stored on any hardware device." The policy further indicates that any emails containing confidential information should be encrypted or password protected. Some of the information defined as confidential in the handbook includes pricing, client contract information, business plans, and personnel information.

Cassidy acquired appellee's alleged trade secret and confidential information during her employment with appellee. After Cassidy's resignation, appellee

6

discovered that Cassidy had sent appellee's policies and procedures, handbooks, training manuals, business development manager packet "contain[ing] a ton of confidential information on every client," job sign-up processes, and agreements to her personal email account. Appellee also discovered that Chase had sent himself a client list and time sheets containing employees' names and hours worked.

The "sign-up process" document that Cassidy sent to her personal email was something that appellee worked "very hard on to streamline bringing clients onboard." The document is not shared with clients and is not intended to be shared outside of appellee's company. Appellee spent nine-years refining the "sign-up process" document. A document entitled "XYZ Construction" was attached to the sign-up process document and contained a form that provides detailed information that appellee's back office and account managers needed to ensure compliance with federal law. Cassidy emailed the "sign-up process" document and "XYZ Construction" document from her work email to her personal email along with appellee's "Placement Personnel Training Guidelines" document.

Cassidy also sent her "business development manager" packet to her personal email from her work email. This packet contained Cassidy's commission and sales information for a period of six months, client information including information regarding how much each client has spent on each job with appellee, how much appellee has profited on the client, and how much money appellee has spent on the client. Appellee testified that this packet shows competitors "exactly which clients are our ideal clients, which clients are prone to spending a lot of money . . . on temporary labor and then, vice versa, which clients not so much."

Cassidy testified that during her employment with appellee she sent an excel spreadsheet entitled "Prospects" to Chase and Brooke from her personal email account and told them "[w]e need to start hitting these jobs." She testified that she

did not remember where the spreadsheet came from but that some of the clients listed on it were clients she was responsible for developing while she was employed by appellee. Cassidy admitted that she sent the spreadsheet to Chase and Brooke so that they would have information needed to develop business for NewTex.

NewTex is in the same business as appellee. At the time of the injunction hearing, NewTex had three employees: Chase, Cassidy, and an intern. Brooke, Chase, and Cassidy's sister also helped out in the back office with invoicing and accounts receivable.

### C. Analysis

Appellants first argue that none of them took any of appellee's alleged trade secret or confidential information by "improper means," and thus, appellee cannot establish a cause of action for misappropriation. Breach of a duty to maintain secrecy is one way "improper means" is defined under TUTSA. *See* Tex. Civ. Prac. & Rem. Code § 134A.002(2). However, possession, disclosure, or use through "improper means" is not the only way a trade secret may be misappropriated under TUTSA. Misappropriation can occur when the alleged trade secret was "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Tex. Civ. Prac. & Rem. Code § 134A.002(3)(B)(ii)(b); *see also Hughes v. Age Industries, Ltd.*, No. 04-16-00693-CV, 2017 WL 943423, *4 (Tex. App.—San Antonio Mar. 8, 2017, no pet.) (mem. op.) ("In addition to the provisions of the employee handbook which required [defendant] to keep this information confidential, [defendant] had a fiduciary duty arising from his employment relationship to maintain the confidentiality of the information."). Trade secrets may also be misappropriated when at the time of disclosure or use the person knew or had reason to know that the person's knowledge of the trade

8

secret was derived from or through a person who owed a duty to maintain the secrecy of the trade secret. *See* Tex. Civ. Prac. & Rem. Code § 134A.002(3)(B)(ii)(c).

It is undisputed that both Cassidy and Chase were appellee's employees, used the alleged trade secrets and confidential information as part of their employment, and had reviewed and signed appellee's employee handbook that contained a provision regarding maintaining the confidentiality of appellee's information. Thus, the trial court could have concluded that this is some evidence that the alleged trade secrets were acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use. *See Johnson*, 73 S.W.3d at 202; *T-N-T Motorsports, Inc.*, 965 S.W.2d at 21–22; *General Insulation Co.*, 2010 WL 307952 at *4. With respect to Chase and NewTex, there is some evidence that they knew or should have known that Cassidy had a duty to maintain the secrecy of appellee's trade secrets and confidential information because Chase had been placed under the same such agreement while he was appellee's employee.

Next, Cassidy argues that for appellee to maintain its action against her, appellee must prove that its information qualifies as a trade secret, has independent economic value, and was disclosed or used. NewTex also argues that appellee cannot show that NewTex used any of appellee's alleged trade secrets. However, at the temporary injunction stage, a trial court does not decide whether the information to be protected is a trade secret or whether appellants are using the information. Instead, appellee has only to establish that the information is entitled to trade secret protection until a trial on the merits and that appellants are in possession of the information and in a position to use it. *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 860 (Tex. App.—Fort Worth 2003, no pet.); *T-*

9

*N-T Motorsports, Inc.*, 965 S.W.2d at 24. We first examine whether appellee's documents are entitled to trade secret protection until a trial on the merits.

Appellee's "sign-up process" document is something that appellee worked "very hard on to streamline bringing clients onboard," has not shared outside of appellee's company, and spent years refining. The document entitled "XYZ Construction" provides "detailed information" that appellee's back office and account managers needed to ensure compliance with federal law and provides a "competitive edge" over appellee's competitors. Appellee's "business development management" packet contains information regarding commissions and sales, client information including information regarding how much each client has spent on each job with appellee, how much appellee has profited on the client, and how much money appellee has spent on the client. Appellee testified that this packet shows competitors "exactly which clients are our ideal clients, which clients are prone to spending a lot of money . . . on temporary labor and then, vice versa, which clients not so much."

The other documents at issue at the hearing were a "time sheet" spreadsheet, appellee's form agreement that it uses with its clients, and its training safety manual. Appellee testified that it creates a form time sheet spreadsheet for their clients. The time sheet spreadsheet contains the employees' names, hours worked, job name, and client name. Appellee testified that, as far as it knows, appellee is the only company that uses this type of method for its time sheets and ultimately it makes invoicing easier and more efficient for its clients, giving appellee a competitive advantage. Appellee admitted that it sends the time sheet spreadsheets, its agreement, and training safety manual to its clients when requested. Appellee also indicated that it does not ask its clients to sign a non-disclosure agreement regarding any information or documentation that appellee

10

provides to its clients. However, there is no indication of the number of times these documents have been sent to appellee's clients. Viewing this evidence in the light most favorable to the order and indulging every reasonable inference in favor of the ruling, limited disclosures are not necessarily enough to extinguish a claim of trade secret status. *See Leonard v. State*, 767 S.W.2d 171, 175 (Tex. App.— Dallas 1988, writ denied); *Lamont v. Vaquillas Energy Lopeno, Ltd., LLP*, 421 S.W.3d 198, 212 (Tex. App.—San Antonio 2013, no pet.) ("Trade secret status is not destroyed simply by showing the protected item to prospective buyers, customers, or licensees."); *Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1185, 1200 (5th Cir. 1986) (holding limited disclosure of trade secret to customers not enough to extinguish secrecy element); *see also Snowhite Textile & Furnishings, Inc. v. Innvision Hospitality, Inc.*, No. 05-18-01447-CV, 2020 WL 7332677, *5 (Tex. App.—Dallas Dec. 14, 2020, no pet. h.) (mem. op.) (trade secret protection not lost where trade secret owner disclosed trade secret to third party client and expected client to treat disclosed materials as confidential).

Appellee testified that the documents are a critical part of the business, in that they are "everything [appellee] has created for the last ten years. . . . every client [appellee has] created in the last two decades of being in this business." Appellee would never allow its trade secret or confidential information to be sent to a competitor because "this is what we do to stand out, to be different from our competition" and that it gives appellee a competitive advantage.

Considering all of the above, we hold that this is some evidence that appellee's documents are entitled to trade secret protection until a trial on the merits. *See Fox*, 121 S.W.2d at 859 (holding pricing information, customer lists, sales and payroll data entitled to trade secret protection until trial where plaintiff showed that it did not intend to share the information outside of its company,

limited access to the information, and testified that a competitor could use the information to gain advantage over plaintiff); *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 552 (Tex. App.—Dallas 1993, no writ) (upholding temporary injunction when record contained evidence from which trial court could have determined that information about pricing, customers, and consultants company sought to protect deserved trade secret protection until trial on the merits).

We next examine whether appellants are in possession and in a position to use appellee's alleged trade secret and confidential information. Appellee also provided evidence that Cassidy emailed each of these documents to her personal email account and offered a list of "file name matches" on Cassidy's personal computer. It is undisputed that at the time of the temporary injunction hearing Cassidy was employed by NewTex, a company in the same field as appellee. NewTex had, at most, one other employee aside from Chase and Cassidy. From this evidence the trial court could have concluded that Cassidy, Chase, and NewTex were in possession of and in a position to use appellee's alleged trade secret information. *See Fox*, 121 S.W.3d at 860; *Rugen*, 864 S.W.2d at 552 (rejecting defendant's argument that there was no evidence of use of former employer's confidential information where there was evidence that defendant possessed confidential information from her former employer and operated a firm in direct competition with it).

Cassidy next argues that "all of [appellee's] manuals were taken from other sources on the Internet and therefore are known and readily accessible through proper means." Cassidy testified that she knew that "some of the information that [appellee] had was copied off the Internet," and thus, she did not believe it was a "big deal" to copy them. This testimony is not conclusive evidence, and the trial

court does not abuse its discretion when it bases its decision on conflicting evidence. *See LasikPlus of Tex., P.C.*, 418 S.W.3d at 216.

Appellants final argument is that appellee was aware that Cassidy was using her personal computer and personal email account to conduct appellee's business and allowed it, and thus, appellee failed to safeguard its trade secret and confidential information. Appellee testified that it allowed Cassidy to use her personal computer because she was a trusted employee. Appellee denies that Cassidy was permitted to use her personal email account to conduct business. Even assuming appellee allowed Cassidy to use her personal computer and personal email account, appellee presented evidence that Cassidy agreed to safeguard appellee's information while it was in her possession. Appellee's employee handbook requires that its confidential information "must reside in protected directories while stored on any hardware device" and the use of other safeguarding measures, such as passwords, to protect appellee's confidential information. There is some evidence that appellee took measures to safeguard its information.

We conclude that appellee has stated a claim against appellants for misappropriation of trade secrets. Based on the evidence presented, we cannot conclude that the trial court abused its discretion by entering the temporary injunction order. We overrule appellants' first issue.

## IV.   ISSUE TWO

In appellants' "Issues Presented" section of their brief, issue two is identified as whether "the trial court abused its discretion by granting injunctive relief that essentially prevents Appellants from competing with Appellee even though Appellee did not file suit for breach of a non-competition agreement." Issue two in the body of the brief argues that to the extent that appellee brought a claim for

13

breach of the employment contract, the contract is not enforceable because it contains a disclaimer "indicating that it is not a contract." We construe these as two separate arguments—one argument regarding whether there was an enforceable employment contract upon which the temporary injunction may be upheld, and one argument regarding whether the temporary injunction prevents competition. We address appellants' second issue within their "Issues Presented" section first.

Within the body of the brief, appellants state that TUTSA was not enacted to prevent competition and that the trial court's order "essentially" prevents competition. In another portion of the brief, appellants state that the trial court's order prohibits appellants from doing business with appellee's customers. These statements are the extent, within the body of the brief, that appellants arguably support their second issue within the "Issues Presented" section of their brief. The temporary injunction prohibits appellants from "[d]oing business with any person that was one of [appellee's] actual customers during [Appellants'] time of employment with [appellee]," but excepts three of appellee's former customers who were already doing business with appellants at the time of the injunction hearing.

Appellants fail to argue how the temporary injunction essentially prevents competition and fails to point to any case law to analyze this issue or support their contention. To the extent that appellants raise an issue regarding how the temporary injunction entered "essentially" prevents competition, appellants have not cited to any legal authority to support this argument. Thus, to the extent that it is raised, this issue is inadequately briefed and waived. *See* Tex. R. App. P. 38.1(i); *In re Commitment of C.H.*, 606 S.W.3d 570, 576 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("A party's brief must contain a succinct, clear, and

accurate statement of the argument in the argument portion of the brief, and the parties must provide a discussion of the fact and authorities relied upon as may be requisite to maintain the issue.").

## V. REMAINING ISSUES

Appellants raise four additional issues, arguing that appellee did not meet its burden to obtain the temporary injunction under its other claims for breach of fiduciary duty, unfair competition, tortious interference, and "to the extent it was raised," breach of an employment contract. However, because we conclude that the trial court did not abuse its discretion in granting the temporary injunction based on appellee's misappropriation of trade secrets claim, and that claim is enough to support the entry of the order, we need not address the remaining issues on appeal. *See* Tex. R. App. P. 47.1; *State v. Ninety Thousand Two Hundred Thirty-Five and no cents in U.S. Currency ($90,235.00)*, 390 S.W.3d 289, 294 (Tex. 2013) (appellate court does not need to address alternative grounds for summary judgment after upholding summary judgment on meritorious ground); *Fuentes v. Union de Pasteurizadores de Juarez Sociedad Anonima de Capital Variable*, 527 S.W.3d 492, 503 (Tex. App.—El Paso 2017, no pet.) ("This Court does not need to address every alternative ground stated in an order if one meritorious ground would uphold the entire order.").

## VI.   CONCLUSION

We affirm the trial court's temporary injunction order.


/s/     Ken Wise
        Justice


Panel consists of Chief Justice Christopher and Justices Wise and Zimmerer.

15