**Affirmed and Memorandum Opinion filed July 30, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-01050-CV

---

### JORGE CORREA AND FELIX RAMIREZ, Appellants

### V.

### HOUSTON SURGICAL ASSISTANT SERVICES, INC, Appellee

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-59398**

## M E M O R A N D U M   O P I N I O N

This interlocutory appeal arises from the trial court's temporary injunction in favor of Houston Surgical Assistant Services, Inc. (HSAS, Inc.).[1]  We affirm.

---

[1] The parties frequently refer to this incorporated entity and the related sole proprietorship Houston Surgical Assistant Services (HSAS SP) interchangeably or globally as HSAS.  As appellants challenge the standing of HSAS, Inc., we delineate these entities throughout.

# I.    BACKGROUND

HSAS SP is a sole proprietorship started by Jaime Barillas in 2003 for the purpose of providing surgical-assistant support to local hospitals. Barillas trained as a physician in El Salvador, moved to the United States, and worked for American Surgical Assistant as a surgical assistant until 2002. Barillas then started and built his own business, HSAS SP. Over time, he began hiring others as surgical assistants to fulfill the contracts he had obtained with hospitals to provide surgical support.

Appellants, Jorge Correa and Felix Ramirez, began working with Barillas in 2005 and 2006, and each signed an employment agreement. Under these agreements, appellants received a salary and a bonus or overtime for surgeries assisted while on call. Each agreement contained a noncompetition covenant.

Appellants each signed new employment agreements with noncompetition covenants[2] in approximately 2010. However, disputes arose when Barillas asked appellants to sign new agreements in 2012; the new agreements incorporated additional hospitals with which HSAS, Inc. had obtained contracts. Correa agreed

---

[2] The specific covenant not to compete at issue here states:

> In consideration of the compensation and other terms and conditions of the Agreement, and in recognition of the fact that the Company would not be offering employment without the following, Employee agrees that while employed by the Company for three (3) years after termination of all such employment, without the prior written consent of the Company, Employee will not directly or indirectly provide or perform services of any kind of character in the Territory (as that term is defined herein), whether as an employee, representative, owner, officer, director, shareholder, partner, proprietor, agent, consultant, independent contractor, lender or otherwise, for any business which is in competition with the business of the Company. Further, Employee agrees that while employed by the Company, and for three (3) years after termination of employment, without the prior written consent of the Company, Employee will not directly or indirectly perform services of any kind or character for the individual physicians served by the Company during the Employee's term of employment.

to execute the new agreement on or about July 27, 2012, but testified that he did so under pressure. Ramirez remained subject to his November 10, 2010, agreement with HSAS SP, but he refused to sign the 2012 agreement. Correa resigned on September 17, 2012. Ramirez stopped working with Barillas on August 6, 2012, though the parties dispute whether he quit or was fired.

On October 12, 2013, appellants filed their original petition, application for temporary restraining order, application for temporary injunction, request for hearing on temporary injunction, and request for declaratory relief. They named as defendants HSAS, Inc., HSAS SP, Jaime Barillas, and Marjury Barillas, wife of Jaime and co-shareholder of HSAS, Inc.

Appellants requested in their petition a declaration that their noncompetition covenants were unenforceable. They also made claims for breach of contract, unjust enrichment, and quantum meruit, alleging neither Correa nor Ramirez had been paid all sums owing under their employment agreements. Finally, appellants sought a mandatory restraining order "requir[ing] the Defendants to allow Plaintiffs to provide patient care to the public of North Houston and/or precluding Defendants from enforcing or attempting to enforce the provisions of the non-competition covenants contained in the respective Employment Agreements."

The defendants answered with a general denial and several affirmative defenses. HSAS, Inc. urged that appellants had breached their employment agreements—specifically their noncompetition covenants—and should be restrained from committing further violations. Additionally, HSAS, Inc. filed a counterclaim and application for temporary and permanent injunctions.

On October 24, 2012, the trial court heard the competing applications for temporary injunctions. On October 29, 2012, the trial court granted the application of HSAS, Inc. and denied appellants' application. The trial court ordered that both

3

appellants were enjoined from violating the terms of the noncompetition covenants by (1) providing surgical assistant services at Methodist Willowbrook Hospital, Cypress Fairbanks Medical Center, North Cypress Medical Center, Tomball Regional Medical Center, Cy-Fair Surgery Center, TOPS Surgical Specialty Hospital, Spring Creek Surgery Center, and Houston Northwest Medical Center; and (2) providing surgical assistant services for the individual physicians served during their employment. Appellants filed their notice of interlocutory appeal on November 16, 2012.[3]

## II. ANALYSIS

In four issues, appellants contend that the trial court erred in granting the temporary injunction because:

(1) HSAS, Inc. did not have standing to request the injunction as it was not a party to the subject noncompetition agreement with appellants;

(2) There is insufficient or no evidence of any probable, imminent, and irreparable injury;

(3) There was no consideration to support the noncompetition agreement; and

(4) HSAS, Inc. materially breached the employment agreements, and thus, there was no enforceable agreement ancillary to the noncompetition agreement.

### A. Standing

In their first issue, appellants contend that HSAS, Inc. does not have standing to seek an injunction to enforce the noncompetition agreements because HSAS, Inc. was not a party to the agreements.

Standing is a component of subject matter jurisdiction and may be raised at

---

[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West Supp. 2012) (authorizing interlocutory appeal from an order that grants or refuses a temporary injunction).

4

any time.  *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993).  We consider standing de novo as it is a question of law.  *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004).  When reviewing a party's standing to seek relief, we accept as true the factual allegations made in that party's pleading unless the opposing party pleads and proves the allegations were made fraudulently to confer standing.  *In re Sullivan*, 157 S.W.3d 911, 914 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding).

For a party to have standing, it must be personally aggrieved with an actual or imminent concrete and particularized injury.  *Daimler Chrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008).  Standing requires "(1) a real controversy between the parties, that (2) will be actually determined by the judicial declaration sought."  *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (quotation omitted).

It is undisputed that neither Correa nor Ramirez signed a contract with HSAS, Inc.  However paragraph 5.01 of the employment agreements provide that "this Agreement shall remain in full force and effect if a successor company is formed and continues to operate."  Thus, the parties join issue on whether HSAS, Inc. has standing as a "successor company" to HSAS SP, the contracting party.

Appellants complain that there is no evidence that HSAS, Inc. is a successor corporation under Texas law because HSAS, Inc. offered no evidence that (1) HSAS SP assigned or transferred its interest; (2) HSAS, Inc. assumed all debts and liabilities of HSAS SP; or (3) the entities were consolidated or amalgamated.[4] HSAS, Inc. responds that because it is "a corporation that replaced [HSAS SP], a

---

[4] Appellants also urge that HSAS, Inc. is not a third-party beneficiary.  As we find the pleadings and evidence support standing as a successor and because HSAS, Inc. does not argue third-party beneficiary status as a basis for standing, we do not address this contention.

sole proprietorship," it is the successor to HSAS SP. HSAS, Inc. also contends that appellants' "current position that HSAS, Inc. lacks standing cannot be reconciled with their pleadings and evidence," noting that a party may judicially admit facts that establish standing. *See Jansen v. Fitzpatrick*, 14 S.W.3d 426, 431 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

Appellants filed their original petition and application for injunction against HSAS SP, HSAS, Inc., and others. The pleading defined the sole proprietorship and corporation as "HSAS." For the remainder of appellants' pleading, they made allegations variously against "HSAS" or "Defendants," without distinguishing between the two entities. Therefore, appellants sought relief against "HSAS" collectively and thereby HSAS, Inc. for breach of contract, unjust enrichment, and quantum meruit, and for a declaratory judgment assigning the rights and responsibilities of all parties under the employment agreements at issue.

Appellants attached to their original pleading an affidavit from Ramirez. He testified that he signed employment contracts "in connection with my employment at Houston Surgical Assistant Services." He testified further that when he was employed by HSAS, HSAS breached the employment agreement with him, and HSAS provided him no confidential information. Correa's affidavit, also attached to the pleading, is identical in its references to HSAS.

The defendants' pleading states that HSAS SP was formed in 2002, and HSAS, Inc. incorporated in 2011 as "a successor to HSAS." The defendants attached and incorporated into their pleading the affidavit of Jaime Barillas, who testified that "Houston Surgical is a Texas corporation and is the successor to HSAS." He testified that if appellants "are allowed to violate the noncompete covenants in their respective Employment Agreements, Houston Surgical will lose goodwill." This affidavit was admitted into evidence at the hearing.

6

At the temporary injunction hearing, Barillas testified that he was the sole owner of HSAS SP and that the business was incorporated in 2011. He explained that he now operates the business as "Houston Surgical Assistant Services, Inc."

Barillas described the confidential information that he and HSAS provided to appellants as part of their training to be surgical assistants for the company to fulfill contracts with the hospitals. He explained that HSAS, Inc. was "currently furnishing surgical assistant services" to the hospitals listed in appellants' contracts.

Further, although evidence submitted to the trial court suggests that appellants received pay after 2011 from "Houston Surgical Assistant Services," Ramirez's unemployment compensation claim was made to the account of HSAS, Inc., and HSAS, Inc. appealed the claim.

From the pleadings, we conclude that appellants have judicially admitted facts that confer standing upon HSAS, Inc. Appellants named HSAS, Inc. as a defendant based upon the assumption that HSAS, Inc. was a party to the employment agreement and had breached it. Moreover, from the evidence, we conclude that there is a "real controversy between the parties;" it is a controversy initiated in the first instance by appellants. As appellants seek a declaration of their rights and those of HSAS, Inc.'s arising from the employment agreements that are also the subject of HSAS, Inc.'s breach of contract counterclaim, those interests will be actually determined by the judicial declaration sought.

Finally, construing the counterclaim in HSAS, Inc.'s favor, we conclude that HSAS, Inc. alleged that it is a successor company as that term was intended in the employment agreements. And Barillas's affidavit and live testimony are some evidence that HSAS, Inc. is a successor company. As such, we conclude that there is some evidence that HSAS, Inc. is "a successor company [that was] formed and

7

continues to operate."[5]

Appellants' first issue is overruled.

## B.    Temporary Injunction

In their remaining issues, appellants urge that HSAS, Inc. failed to establish its entitlement to a temporary injunction on the noncompetition covenants.

### 1.    *Standard of Review*

An applicant for a temporary injunction seeks extraordinary relief. *In re Tex. Nat'l Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex. 2002). The sole issue before the trial court is whether the applicant may preserve the status quo pending a trial on the merits. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). We consider the status quo to be the last actual, peaceable, noncontested status that preceded the pending controversy. *RP&R, Inc. v. Territo*, 32 S.W.3d 396, 402 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

The decision to grant or deny a temporary injunction lies within the discretion of the trial court, and the court's ruling is subject to reversal only for a clear abuse of that discretion. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). "An abuse of discretion does not exist where the trial court bases its decisions on conflicting evidence." *Davis*, 571 S.W.2d at 862. When, as here, no findings of fact or conclusions of law are filed, the trial court's determination of whether to

---

[5] We address the successor relationship between HSAS SP and HSAS, Inc. because the parties join issue. However, we need not determine in this appeal whether HSAS, Inc. has the capacity to enforce the agreement as a successor or otherwise, or whether appellants have appropriately contested that legal authority. *See, e.g.*, *Tandan v. Affordable Power, L.P.*, 377 S.W.3d 889, 893–94 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Appellants cite no authority holding that a formal successor relationship is necessary to establish standing. Their only authority concerning the successor relationship is not a standing case. *See Tyco Valves & Controls, L.P., v. Colorado*, 365 S.W.3d 750 (Tex. App.—Houston [1st Dist.] 2012, pet. granted). We need only determine that there is a controversy between these parties that will be judicially determined by this lawsuit. We find these elements met on this interlocutory record.

grant or deny a temporary injunction must be upheld on any legal theory supported by the record. *EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 657 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Finally, we indulge all legitimate inferences from the evidence in the light most favorable to the trial court's order granting the temporary injunction. *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 419 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

To obtain a temporary injunction, the applicant must plead a cause of action against the defendant and show both (1) a probable right of recovery on that cause of action and (2) a probable, imminent, and irreparable injury in the interim. *EMS USA*, 309 S.W.3d at 657 (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)).

In their third and fourth issues, appellants challenge the trial court's finding that HSAS, Inc. has a probable right of recovery. In their second issue, appellants challenge the trial court's finding that appellee has a probable, imminent, and irreparable injury. We address each contention in turn.

### 2.    *Probable right of recovery*

In their third and fourth issues, appellants urge that the trial court erred in entering the injunction on the noncompetition covenants because those covenants are not enforceable. First, appellants urge that the covenants are not supported by consideration. Second, appellants urge that HSAS, Inc. materially breached the employment agreements and, thus, cannot enforce the covenants contained within those agreements.

It is important to our analysis that the ultimate enforceability of the subject noncompetition covenants is not before this court. *See Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 884–85 (Tex. App.—Dallas 2003, no pet.); *see also*

*EMS USA*, 309 S.W.3d at 658. The only issue before the trial court is whether the applicant has a probable right of recovery. *See Walling*, 863 S.W.2d at 57–58. Therefore, the only issue before this court is whether the trial court abused its discretion in determining that appellants have a probable right of recovery. *See EMS USA*, 309 S.W.3d at 658; *Cobb*, 109 S.W.3d at 885.

We begin the analysis with the requisites for enforceable noncompetition covenants. All of these requisites flow from the fundamental principle that a noncompetition covenant, standing alone, is a restraint of trade designed for no purpose other than eliminating competition. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681–82 (Tex. 1990); *see also Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 780–82 (Tex. 2011) (Willet, J., concurring). Therefore, such a covenant is against Texas public policy and unenforceable. *See Mann Frankfort*, 289 S.W.3d at 849; *DeSantis*, 793 S.W.2d at 681–82. However, the Texas Legislature recognizes that a noncompetition covenant is enforceable in limited circumstances. Specifically,

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COM. CODE ANN. § 15.50(a) (West 2011).

Thus, the statute provides three requisites for an enforceable noncompetition covenant: (1) it must be ancillary to or part of an otherwise enforceable agreement; (2) it must be limited in time, area, and scope of activity;[6] and (3) it must not be

_____

[6] Appellants do not assign specific error to the breadth of the injunction. However, they

10

any greater restraint than necessary to protect the business interest at issue. For an agreement to be otherwise enforceable, it must be supported by consideration. *See Marsh USA*, 345 S.W.3d at 775 (majority op.). So, for example, an at-will employment relationship is not an "otherwise enforceable agreement," standing alone, because it is not binding on either the employee or the employer. *Martin v. Credit Prot. Ass'n*, 793 S.W.2d 667, 669–70 (Tex. 1990). However, a noncompetition covenant is part of an otherwise enforceable agreement if the employer gives independent, nonillusory consideration in exchange for the employee's promise not to compete. *See Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex. 1994), *overruled on other grounds by Marsh USA*, 354 S.W.3d 764. Therefore, as part of appellants' first issue, we must determine whether HSAS, Inc. gave appellants independent, nonillusory consideration in exchange for their promises not to compete.

### a. Confidential information as consideration

HSAS, Inc. urges that Texas law recognizes a promise to provide confidential information as sufficient consideration to support a noncompetition covenant. HSAS, Inc. notes that Barillas testified he compiled surgeon preferences and relationships over time and that he shared those with appellants when he hired them. Barillas also testified about his confidential contracts with the hospitals at

---

mention that because the order precludes appellants from working with any physician with whom they had worked at HSAS, Inc., the "order goes beyond the scope of Texas law to the extent that a non-compete provision may only limit scope (*i.e.*, the type of activity), geographic area and time." Even if we construe this reference to preserve error, we would find no error here. Texas law authorizes a reasonable restraint on scope of activity necessary to protect the promisee's interest. *See DeSantis,* 793 S.W.2d at 682, 685; *see also* TEX. BUS. & COM. CODE ANN. § 15.50. An order prohibiting appellants from providing surgical assistant services (same services) to the physicians with whom appellants worked at the subject hospitals (customers with whom the company has a relationship and the promisees worked) is not an unreasonable restraint on the scope of activity. *See Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386–88 (Tex. 1991); *see also EMS USA*, 309 S.W.3d at 660. Appellants do not otherwise challenge the scope of the injunction or the scope of the covenant.

11

which he supplied surgical assistance services and the special pricing in those contracts; this information, too, he shared with appellants.

Appellants do not disagree with HSAS, Inc.'s statement of the general rule of confidential information. Appellants recognize that an employer gives consideration if it promises to provide confidential or proprietary information. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 649 (Tex. 2006). However, appellants contest that they were provided any information that may be legally characterized as "confidential." As for training, appellants urge they needed none. As for introductions to physicians, appellants claim they introduced themselves. As for physician preferences, appellants state that they learned about preferences from the surgeons. As for the hospital contracts, appellants deny knowing the terms. Yet, by contract and testimony, HSAS, Inc. contradicted all of this evidence.

Specifically, Barillas testified that he brought Correa and Ramirez into surgeries to observe so that he could teach them the specific preferences of the physicians with whom he had developed relationships. And the employment agreements at issue speak to the proprietary information to be supplied. The agreements state that the employer "shall provide [in its discretion] . . . access to Proprietary Information about the Company." The agreements define "proprietary information" as information "proprietary to, about or created by Employer [which] gives Employer some competitive business advantage." Among the ten items listed is "physician names and other physician or hospital information (including physician and hospital characteristics, services and agreements)." The agreements also require a "specific acknowledgement" that "the knowledge and experience that Employee will acquire while an employee of the Employer . . . are of special, unique and extraordinary character," and that the employee "will have frequent and

substantial contact with the Employer's representatives, business sources and relationships."

Appellants urge that there is nothing secret about the information Barillas has about the surgeons. To the extent that a surgeon has a preference, appellants argue that such is the surgeon's confidential information. Moreover, appellants point out, the surgeons have "preference cards" in the hospital so the information is publicly available. As such, appellants urge this case is most like *Hunke, DDS v. Wilcox*, in which the employer sought the protect referral sources. 815 S.W.2d 855 (Tex. App.—Corpus Christi 1991, writ denied). However, this court has previously distinguished *Hunke* for a compilation of customer data. *See Rimkus Consulting Grp., Inc. v. Budinger*, No. 14-98-01101-CV, 2001 WL 619067, at *3 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (not designated for publication) (holding that a customer database containing names of decisionmakers, their insurance coverage, and their billing information, was more like a protectable customer list than an unprotectable list of contacts). We again find *Hunke* wholly distinguishable. Appellants were not introduced to key physicians in the community and told not to contact them. Appellants were, according to Barillas's testimony, entrusted with assistant surgeon/surgeon relationships along with compiled data to make the relationships more valuable.

Appellants also overlook other authority that holds compilations of information, even readily available information, may constitute a trade secret. *See, e.g.*, *Reliant Hosp. Partners, LLC v. Cornerstone Healthcare Grp. Holdings, Inc.*, 374 S.W.3d 488, 499–500 (Tex. App.—Dallas 2012, pet. filed). Several Texas cases specifically recognize customer preferences as protectable trade secrets. *See Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.3d 593, 600-01 (Tex. App.— Amarillo 1995, no writ); *see also T-N-T Motorsports, Inc. v. Hennessey*

13

*Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet dism'd).

Appellants also urge that any training Barillas provided is not confidential information. Appellants rely upon *Hospital Consultants, Inc. v. Potyka* to support their position that they gained no confidential information while employed by HSAS, Inc. *See* 531 S.W.2d 657 (Tex. Civ. App.—San Antonio 1975, writ ref'd n.r.e.). In *Potyka*, the employer provided various forms of training to emergency room physicians which made them more competent. *Id.* at 662. The court declined to hold that "general knowledge, skill or facility acquired through training or experience while working for an employer become[s] the 'property' of the employer." *Id.* Thus, appellants argue, because they were already trained in assisting surgeries and introduced themselves to the surgeon to whom they were assigned, they did not obtain anything confidential from Barillas.

However, when we view the evidence in this case in the appropriate light, *Potyka* is not only distinguishable, it provides support to HSAS, Inc. The *Potyka* court stated, "There is nothing to indicate that [the employer] confided in the doctors by revealing to them special techniques known only to him." *Id.* Here, HSAS, Inc. relies on Barillas's testimony that he obtains and compiles information about individual surgeon preferences, both what the doctors use for supplies as well as how they perform the procedures. For example, he knows whether a particular surgeon uses sutures, staples, or Thermabond at the end of surgery. Because he has no need to ask preference questions during surgery, he is a "partner" to the surgeon and makes the surgery easier. Thus, the information gives him a competitive advantage. Further, Barillas explained that working with the surgeons gives him better knowledge of their preferences than the simple preference cards kept at the hospital.

14

Finally, appellants contested that Barillas shared the hospital contracts and pricing with them. HSAS, Inc. has signed contracts with the hospitals to provide on-call surgical assistant services in labor and delivery, and HSAS, Inc. bills insurance companies for reimbursement. HSAS, Inc. has confidential pricing with the hospitals and confidential arrangements regarding Medicaid and Medicare patients. Barillas testified that although he did not show appellants the contracts, "they knew exactly what was the deal with the hospitals." Pricing information is an example of confidential data which provides an employer with a competitive advantage and, thus, is protected. *See Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 551–52 (Tex. App.—Dallas 1993, no writ).

We conclude that the trial court was faced with competing evidence about whether the surgeon preferences were confidential information and whether confidential pricing was shared with appellants. Thus, the trial court did not abuse its discretion in finding that HSAS, Inc. gave confidential information as consideration for appellants' promises not to compete. As we find that the record contains some evidence that the customer preferences constitute confidential information, we need not address HSAS, Inc.'s argument concerning its goodwill.

Appellants' third issue is overruled.

### b. *First material breach*

Appellants contend there is a second reason the trial court should not have found a probable right of recovery. That is, HSAS, Inc. materially breached the employment agreements by (1) firing Correa for not signing a new employment agreement; (2) failing to pay appellants termination pay in a timely manner; and (3) failing to pay appellants overtime pay.

Breach of contract by one party may excuse performance by the other party.

15

*See Mustang Pipeline Co v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam). Such breach of contract must, however, be material. *Id*. at 198. The parties agree that materiality is governed by the factors supplied by the Restatement (Second) of Contracts, Section 241:

> (a)    the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b)    the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c)    the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d)    the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and]
>
> (e)    the extent to which the behavior of the party failing to perform or to offer to perform comports with the standards of good faith and fair dealing.

RESTATMENT (SECOND) OF CONTRACTS § 241 (1981); *see also Mustang Pipeline*, 134 S.W.3d at 199.

We reject Correa's first alleged act of material breach. The trial court heard competing evidence about whether Correa was fired or resigned. Correa himself suggested that he resigned. As such, the trial court did not abuse its discretion in failing to find that HSAS, Inc. materially breached the contract by firing Correa.

We similarly reject appellant's third alleged act of material breach. We cannot see how, and appellants have not argued how, the evidence shows that appellants were entitled to or demanded any overtime pay that they were not paid. Barillas testified that he called the "overtime pay" referenced in the contract "bonus pay" for surgeries performed while on call; he stated that he paid the bonus every fifteen days after appellants turned in bonus forms showing procedures

16

performed. Appellants never complained about this procedure. Ramirez testified that there was one "invoice" he was not paid for, but Marjury Barillas testified that she believed appellants had been paid all sums owing. Thus, regarding overtime pay, because we find no evidence of breach, the trial court did not abuse its discretion in failing to find a material breach by failure to pay overtime. At best, Ramirez and HSAS, Inc. provided conflicting evidence, and there would be no abuse of discretion by the trial court under these circumstances.

The final material breach appellants allege is the failure of HSAS, Inc. to timely pay termination pay under the employment agreements. The agreements provide generally that if the employer terminates without cause, it must give seven days' notice, and if the employee voluntarily terminates, then the employee should give thirty days' notice. Further, the agreements permit the employer to elect "to pay Employee the equivalent of the notice period" should the employer wish to "conclude Employee's employment and physical presence with the Employer immediately." Correa and Ramirez do not dispute that they were paid termination pay—they complain of delay alone.

HSAS, Inc. correctly points out that the agreement, itself, does not state a specific time period within which termination pay must be paid. As such, we look to whether the trial court abused its discretion in finding some evidence that HSAS, Inc. paid within a reasonable time. *See Hewlett-Packard Co. v. Benchmark Elecs., Inc.*, 142 S.W.3d 554, 563 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Gensco, Inc. v. Transformaciones Metalurgicias Especiales, S.A.*, 666 S.W.2d 549, 553 (Tex. App.—Houston [14th Dist.] 1984, writ dism'd); *see also Krueger v. Young*, 406 S.W.2d 751, 756 (Tex. Civ. App.—Eastland 1966, writ ref'd n.r.e.). What is a reasonable period of time depends on the facts of the case, including the subject matter of the contract. *See Krueger*, 406 S.W.2d at 756; *see*

17

*also Hewlett-Packard*, 142 S.W.3d at 562–63. Particular to this case, the agreements state that the termination sums will be "payable in accordance with the Company's normal payroll procedure."

Correa stopped working for HSAS, Inc. on September 17, 2012, and his counsel wrote to HSAS, Inc. on that date to confirm that Correa would be receiving termination pay. Both Barillas and his wife testified about the reasons for delay in paying Correa termination pay. Barillas testified that he was waiting for paperwork from Correa. Barillas did not receive the paperwork until the next pay period. Marjury Barillas testified that although she does not do the payroll, she believed the last payment was made to Correa "right after we received his bonus" in October. She explained that the bookkeeper does not do payroll each week, and she did not believe the bonus paperwork was received from Correa in time for the September 28, 2012 payroll. Correa was paid termination pay on October 11, 2012.

From this evidence, we conclude that there is some evidence HSAS, Inc. paid Correa within a reasonable time pursuant to HSAS, Inc.'s normal payroll procedures. The trial court did not abuse its discretion in finding that HSAS, Inc. did not commit a material breach in failing to pay Correa termination pay before October 11, 2012.

It is undisputed that Ramirez stopped working for HSAS, Inc. on August 6, 2012. There was much competing and contradictory evidence from both parties about whether Ramirez quit or was fired. Barillas testified that Ramirez was not fired; "he was not agree to sign the contract and he decided to leave." Barillas testified further that Ramirez was paid only through his last day of employment on August 6.

18

Following Ramirez's August 6 departure from HSAS, Inc., his attorneys wrote to HSAS, Inc. on August 20, seeking information about the number of hours Ramirez was on call and required to remain at the hospital, as well as the amounts paid to Ramirez for such hours. The attorneys indicated their purpose for the letter was to ascertain the amount due to Ramirez. However, the attorneys specifically acknowledged that HSAS, Inc. had "paid Mr. Ramirez regular wages for the seven (7) day notice period following his termination." The record does not reflect when Ramirez or his attorneys notified HSAS, Inc. that this statement was incorrect or that termination pay was still owing. HSAS, Inc.'s counsel wrote to Ramirez's counsel on August 31, stating HSAS, Inc.'s belief that no additional monies were owed. Yet, when asked to explain the delay in Ramirez's termination pay, Marjury Barillas testified that she guessed it was "overlooked." Neither party cites any evidence that HSAS, Inc. elected for Ramirez to leave the premises before the end of the notice period and collect termination pay.

From this evidence, we conclude that there is conflicting evidence about whether Ramirez was entitled to termination pay or, if entitled, how much termination pay. The trial court heard some evidence that it was Ramirez who elected to leave HSAS, Inc. before the expiration of the termination period; these are facts that would not entitle Ramirez to termination pay. The trial court did not abuse its discretion on this record.

However, assuming for argument's sake that Ramirez was entitled to termination pay, there is no evidence that the termination pay was paid within a reasonable time and in accordance with HSAS, Inc.'s normal payroll procedures. Regardless, upon reviewing the Restatement factors, we conclude the trial court

19

would not have abused its discretion in failing to find the breach to be material.[7]

Under factor (e) of the Restatement—the extent to which the behavior of the party failing to perform or to offer to perform comports with the standards of good faith and fair dealing—the parties' *bona fide* dispute over whether Ramirez was entitled to termination pay as well as Ramirez's mistaken representation that the termination pay was already paid as of August 20, 2012, are important facts that suggest the good faith of HSAS, Inc. Further, that any pay owing was merely seven days' pay and that the sum was ultimately paid weigh favorably under factors (a) through (d).

Based upon the foregoing, we conclude that the trial court did not abuse its discretion in failing to find that HSAS, Inc. committed a material breach that would excuse appellants from their noncompetition covenants.

Appellants' fourth issue is overruled.

### 3. *Probable, imminent, and irreparable injury*

In their second issue, appellants urge that there is no evidence or insufficient evidence of any probable, imminent, and irreparable injury to support the trial court's injunction. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204. Thus, an applicant for a temporary injunction must establish that there is "no adequate remedy at law for damages." *Sharma*, 231 S.W.3d at 427. "An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief." *Id.* Further, there is no abuse of discretion in granting a

---

[7] We note that the alleged breach we examine is a ***delay*** in payment. Moreover, we assume for this analysis that the delay is sixty days—approximately mid-August, 2012 (normal payroll procedures following August 6) to October 11, 2012.

20

temporary injunction when the enjoined conduct threatens to disrupt an ongoing business. *See, e.g.*, *Liberty Mut. Ins. Co. v. Mustang Tractor & Equip. Co.*, 812 S.W.2d 663, 666–67 (Tex. App.—Houston [14th Dist.] 1991, no writ).

Appellants urge, citing *Pizzini v. O'Neal*, that in deciding irreparable injury, a trial court should balance the probable harm to the applicant if the injunction is erroneously denied with the probable harm to the responding party if the temporary injunction is erroneously granted. No. 09-05-102-CV, 2005 WL 2088369, at *3 (Tex. App.—Beaumont Aug. 31, 2005, no pet.) (mem. op.) (citing *NMTC Corp. v. Conarroe*, 99 S.W.3d 865, 868 (Tex. App.—Beaumont 2003, no pet.)).[8] And appellants urge that the trial court erred in striking the balance between any harm alleged by HSAS, Inc. and the probable harm to appellants upon an injunction. We disagree.

The probable, imminent, and irreparable harm to HSAS, Inc. is supported by pleadings and proof. HSAS, Inc. gave appellants confidential customer preferences in the handful of hospitals in which HSAS, Inc. supplied surgical assistants. HSAS, Inc. brought appellants into those relationships of confidence. HSAS, Inc. shared with appellants confidential contract pricing and reimbursement information that gave HSAS, Inc. a competitive advantage over others. Appellants are now working in the same hospitals with the same surgeons. In at least one circumstance, the surgeon was not even aware that one of appellants was not still working for HSAS, Inc. Appellants are able to assist surgeries in the same

---

[8] Appellants cite only these cases from the Beaumont Court of Appeals holding that a balancing of probable harm is required, but we are not bound by that court's approach. *See Jankowiak v. Allstate Prop. & Cas. Ins. Co.*, 201 S.W.3d 200, 207–08 (Tex. App.—Houston [14th Dist.] 2006, no pet.). We have found no decision from this court or the Texas Supreme Court engaging in such a balancing inquiry. But we will balance the equities in this case because HSAS, Inc. does not argue that it is inappropriate to do so. We need not, and do not, hold by this opinion that such a balancing inquiry is necessarily required.

hospitals, with the same physicians as HSAS, Inc., using HSAS, Inc.'s compiled techniques to undermine HSAS, Inc.'s created relationships, knowing and undercutting HSAS, Inc.'s negotiated and, thus, fixed contract pricing.

Appellants mistakenly suggest that Barillas admitted that HSAS, Inc. had suffered no harm as a result of appellants' activities in violation of their noncompetition covenants. Actually, the most that can be said for the cited testimony is that HSAS, Inc. has not yet lost *all* of its business due to appellants' breach of the covenants. Barillas testified that the surgeons still request his services, but he did not know "exactly how big it's going to be, the damage." He said, "I don't know exactly how bad it is going to be to hurt my company." There is, accordingly, some evidence that the injury to HSAS, Inc. is irreparable with no adequate remedy at law for damages.

On the other side of the balance, appellants urge that enforcing the covenants against them will cause them an inability to work for three to six months because they cannot obtain privileges in hospitals outside of the covenant territory. The contention is belied by their acknowledgement that when they came to HSAS SP, they obtained privileges—with Barillas's assistance—within days. Appellants also have no explanation—other than "it was a personal decision"—for their failure to even seek privileges at other hospitals. Further, by their employment agreements, appellant's acknowledged and agreed that upon "the termination of my employment by, or relationship with, Company will cause the immediate and automatic loss of clinical privileges, if any, that I hold to practice at [the subject hospitals]." Thus, appellants' unsupported concern that they may not be able to work for three to six months is not a result of the covenant not to compete; it is because they do not have privileges at any hospitals, and they are taking no steps to get any.

To the extent that appellants have not forfeited their privileges at the subject hospitals, as the contract provides, appellants urge a need to continue assisting surgeries within the covenant territory in the Northwest Houston area. Correa admitted that he prefers to work in Northwest Houston, though he lives in Katy, because he has built "very good surgical personal relationship with some of the doctors." Ramirez also prefers to continue working in Northwest Houston because he knows the doctors and they are comfortable working with him. Neither Correa nor Ramirez attempted to return to American Surgical Assistant, their prior employer.

We conclude that, on balance, the trial court did not abuse its discretion in determining that the harm to HSAS, Inc. upon appellants' breaching their noncompetition covenants is greater than the harm to appellants caused by a temporary injunction. The temporary injunction is specifically tailored to prevent appellants from usurping the competitive advantage derived from HSAS, Inc.'s confidential information, as the injunction is appropriately limited to specific hospitals and the physicians with whom the appellants actually worked.[9]

We find sufficient evidence to support the trial court's determination that HSAS, Inc. showed a probable, imminent, and irreparable injury. We overrule appellants' second issue.

---

[9] Indeed, the trial court's temporary injunction is narrower than the noncompetition covenants to which appellants voluntarily agreed, which would have prohibited appellants from working within a fifteen-mile radius of any of the subject hospitals.

23

Having overruled all of appellants' issues, we affirm the trial court's temporary injunction order.

/s/    Sharon McCally
Justice

Panel consists of Justices Christopher, Jamison, and McCally.